UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEYRAN ANDREASYAN,<br><br>    Petitioner,<br><br>    v.<br><br>ALBERTO R. GONZALES, et al.,<br><br>    Respondents. | CASE NO.  C06-285-JCC-MJB<br><br>REPORT AND RECOMMENDATION RE: INDEFINITE DETENTION |

I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a native and citizen of Uzbekistan who is being detained by the United States Immigration and Customs Enforcement ("ICE") pursuant to an order of removal that became final on November 17, 2005. On February 28, 2006, he filed a Petition for Writ of Habeas Corpus pursuant to 8 U.S.C. § 2241, challenging the constitutional and statutory authority of ICE to detain him any further due to the unlikelihood of his removal from the United States in the reasonably foreseeable future. (Dkt. #3). Petitioner requests that he be released from custody pending his removal from the United States. Respondents contend that petitioner's continued detention is permitted by Section 214(a)(1)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(1)(C), because petitioner's removal period has been suspended and extended due to petitioner's failure and refusal to "make timely application in good faith for

REPORT AND RECOMMENDATION
RE: INDEFINITE DETENTION
PAGE – 1

travel or other documents necessary to his removal." (Dkt. #23 at 3, Dkt. #15).

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #3) be GRANTED and respondents' motion to dismiss (Dkt. #15) be DENIED.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner Seyran Andreasyan is a native and citizen of Uzbekistan. (Dkt. #16 at R154). On October 20, 1999, he and his mother were admitted to the United States as refugees. (Dkt. #16 at L12). Petitioner was subsequently granted adjustment of status to lawful permanent resident on November 14, 2002, retroactive to his date of arrival. (Dkt. #16 at R43, R166).

On April 22, 2005, ICE filed a Notice to Appear, placing petitioner in removal proceedings and charging him with removability pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on a March 19, 2004, conviction in the Superior Court for the State of Alaska for the offense of Robbery in the Second Degree in violation of Alaska Statute 11.41.510(a)(1). (Dkt. #16 at R166, L49). On August 25, 2005, an Immigration Judge ("IJ") denied petitioner's request for withholding of removal and deferral of removal under the Convention Against Torture and ordered him removed to Uzbekistan. (Dkt. #16 at R164). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On November 17, 2005, the BIA affirmed the IJ's decision without opinion. (Dkt. #16 at L259).

### A. Removal Efforts

On December 12, 2005, ICE provided petitioner with an instruction sheet regarding the requirements for assisting in his removal, and a form I-229a "Warning for Failure to Depart" indicating the consequences for failing to provide assistance. (Dkt. #16 at R146-47). Petitioner initially cooperated with ICE, and provided information for a travel document request. (Dkt. #23, Attach. 1). On January 27, 2006, ICE forwarded the travel document request to the Consulate General of Uzbekistan and to ICE Headquarters for forwarding to the Embassy of

REPORT AND RECOMMENDATION
RE: INDEFINITE DETENTION
PAGE – 2

Uzbekistan.  (Dkt. #16 at R168, 233, 237).  On February 17, 2006, ICE contacted the Vice Consul for the Consulate of Uzbekistan.  The Vice Consul indicated that "the information submitted by [ICE] was forwarded to Uzbekistan on or about February 7, 2006 to verify if [Mr. Andreaysan] has retained citizenship."  (Dkt. #16 at R233).

On or about February 21, 2006, ICE conducted a Post Order Custody Review.  (Dkt. #16 at R229-238).  The reviewing officer concluded that petitioner "has support from his family and church.  He completed numerous courses while incarcerated and has offers of employment.  As removal is not imminent or reasonably foreseeable in the next 90 days, the reviewer recommends release on an Order of Supervision."  (Dkt. #16 at R230).  Nevertheless, on February 24, 2006, petitioner was informed that he would not be released but would remain in ICE custody.  (Dkt. #16 at R240).

On April 5, 2006, the Embassy of Uzbekistan notified ICE that it would also need a completed "passport application" from Mr. Andreaysan.  (Dkt. #23, Attach. 1).  On or about April 11, 2006, ICE provided petitioner with a "passport application" form to complete that was written in Russian.  (Dkt. #15, Attach. 1; Dkt. #20, Ex. A).  The same day, ICE received an email from petitioner's attorney, Chris Kerkering, indicating that petitioner did not understand some of the Russian language on the application, and offering to have the application translated into English for him.  *Id*.  On April 14, 2006, Mr. Kerkering forwarded the translated application to ICE, which was delivered to petitioner to complete.  *Id*.  According to respondents, petitioner refused to complete the passport application.  *Id*.  On April 17, 2006, ICE provided petitioner with a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)."  *Id*.  The notice stated that,

> The burden to obtain a travel document for your removal does not rest solely with ICE.  Pursuant to Section 241(a)(1)(C) of the Immigration and Nationality Act (INA). you are required to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States.  If you fail to make these efforts. Section 241(a)(1)(C) allows for the extension of the removal period.  As you have failed to comply with your obligation and are acting to prevent your removal from the

REPORT AND RECOMMENDATION
RE:  INDEFINITE DETENTION
PAGE – 3

United States. The removal period is therefore extended in your case. (Dkt. #15, Attach. 1).

On May 8 and again on May 16, 2006, petitioner filled out the "passport application" form and provided it to ICE. (Dkt. #22, #23). On May 15, 2006, the passport application was sent to ICE Headquarters to be forward to the Uzbekistan government. (Dkt. #23). ICE was advised that the Uzbekistan government hopes to make a decision in petitioner's case within the next few weeks. (Dkt. #23).

### III. DISCUSSION

The post-removal-detention statute, INA § 241(a), 8 U.S.C. § 1231(a), provides for the mandatory detention of aliens awaiting removal from the United States for an initial period of three months. This three months may be followed by an additional three months discretionary detention during which detention remains presumptively valid. *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001).

In *Zadvydas*, the Supreme Court explained that after this six-month period, the alien is eligible for conditional release upon demonstrating that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nonetheless, the six month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The petitioner has the burden of coming forward with "good reason to believe there is no reasonable likelihood of removal in the reasonably foreseeable future." *Id*. Then the burden shifts to respondents to produce evidence which could rebut petitioner's showing. *Id*.

In this case, petitioner has been in ICE custody following a final order of removal since November 17, 2005. Thus, petitioner's six-month presumptively reasonable removal period

REPORT AND RECOMMENDATION
RE:  INDEFINITE DETENTION
PAGE – 4

1  expired on or about May 17, 2006.  Respondents contend that petitioner's continued detention is

2  warranted "in light of [his] refusal to cooperate with ICE's efforts to secure a travel document

3  for his return to Uzbekistan."  (Dkt. #15 at 6).  Petitioner asserts that respondents claim that he

4  has not cooperated is now moot because he has provided ICE with a completed and signed

5  passport application form.  (Dkt. #19 at 9).  Petitioner also argues that ICE cannot rely on INA §

6  1231(a)(1)(C) to extend the removal period because the 90-day removal period had already

7  expired.  *Id.*  Finally, petitioner argues that ICE has failed to show that his initial refusal to

8  complete the passport application form hindered its efforts to remove him to Uzbekistan.  *Id.*

   Pursuant to INA § 241(a)(1)(C), "the removal period shall be extended . . . and the alien

10 may remain in detention during such extended period if the alien fails or refuses to make timely

11 application in good faith for travel or other documents necessary to the alien's departure or

12 conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. §

13 1231(a)(1)(C).  The Ninth Circuit has interpreted Section 241(a)(1)(C) as authorizing continued

14 detention of a removable alien "<u>so long as</u> the alien fails to cooperate fully an honestly with

15 officials to obtain travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)(emphasis

16 added); *see also Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003)(holding that *Zadvydas* does

17 not apply where an alien holds the "'keys [to his freedom] in his pocket' and could likely

18 effectuate his removal by providing the information requested by the INS.").  Section

19 241(a)(1)(C) is implemented by regulation found at 8 C.F.R. § 241.4(g), which provides that the

20 removal period "shall be extended <u>until</u> the alien demonstrates to the Service that he or she has

21 complied with the statutory obligations.  Once the alien has complied with his or her obligations

22 under the law, the Service shall have a reasonable period of time in order to effectuate the alien's

23 removal."  8 C.F.R. § 241.4(g)(1)(ii)(emphasis added).

24   It is undisputed that, although petitioner initially refused to complete the passport

25 REPORT AND RECOMMENDATION
   RE:  INDEFINITE DETENTION
26 PAGE – 5

application form, petitioner provided ICE with a completed and signed passport application form on or about May 8, 2006.  Accordingly, ICE's claim that petitioner has not cooperated is moot.  *See Lema*, 341 F.3d at 857; *see also* 8 C.F.R. § 241.4(g)(1)(ii).  Furthermore, the Court agrees with petitioner that ICE cannot extend the removal period under Section 241(a)(1)(C) where, as here, the removal period expired three months earlier.  According to the Code of Federal Regulations, extension of the removal period must occur before the removal period expires.  8 C.F.R. § 241.4(g)(1)(ii)(requiring that ICE provide notice of failure to comply "before the expiration of the removal period"); see also 8 C.F.R. § 241.4(g)(1)(iii)(providing that ICE shall advise the alien that the notice of failure to comply shall extend the removal period, "if the removal period has not yet expired.").  Once the 90-day removal period has expired, Section 241(a)(1)(C) is not applicable.  Consequently, ICE cannot rely on Section 241(a)(1)(C) to extend a removal period that expired three months earlier.

Alternatively, respondents contend that petitioner's continued detention beyond the six-month presumptive period is lawful because they have been advised by the Uzbekistan government that it would make a decision regarding petitioner's citizenship within the next several weeks.  (Dkt. #23 at 1, Attach. 1).  Petitioner challenges respondents' claim that he will likely be removed in the reasonably foreseeable future, contending that ICE's own Post Order Custody Review concluded that petitioner's "removal is not imminent or reasonably foreseeable" and recommended that petitioner be released on an Order of Supervision.  (Dkt. #16 at R230).  Furthermore, ICE headquarters stated that "although travel documents have been issued by the Embassy of Uzbekistan, the process is very lengthy." *Id*.

The Court finds that petitioner has not shown that such travel documents will not be forthcoming in the reasonably foreseeable future.  Uzbekistan is a country that accepts repatriation of its citizens, and efforts are actively underway to secure the necessary travel

REPORT AND RECOMMENDATION
RE:  INDEFINITE DETENTION
PAGE – 6

documents form the Uzbekistan government.  Based on the record, there is no indication that ICE will not be able to effectuate petitioner's removal to Uzbekistan.  Accordingly, the Court finds that there is a reasonable likelihood that petitioner will be removed in the reasonably foreseeable future.

However, as this Court previously determined in *Lun v. INS*, Case No. C02-0937L (W.D. Wash. Dec. 4, 2002), "[t]his conclusion does not end the analysis." *Id.* at 4.  Rather, the Court must also ask whether the continued detention comports with the basic purposes of the statute, "namely, assuring the alien's presence at the moment of removal and protecting the community." *Id.* "Thus, even where removal is reasonably foreseeable, the habeas court should consider the alien's flight risk and the risk he poses to the community to determine whether confinement during the reasonable removal period is justified." *Id.* (citing *Zadvydas*, 121 S. Ct. at 2499).

Here, ICE's only apparent justification for continuing to detain petitioner is its belief that petitioner will be removed in the reasonably foreseeable future.  However, like Lun, ICE has already determined that petitioner is neither a flight risk nor a danger to the community.  (Dkt. #16 at R230-31).  Accordingly, petitioner's continued detention would not further the basic purposes of the statute and, therefore, is not justified.

## IV.  CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT petitioner's habeas petition and order petition's release on conditions.  Such conditions may include those set forth in 8 C.F.R. § 241.5(a).  A proposed Order accompanies this Report and Recommendation.

DATED this 9th day of June, 2006.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
RE:  INDEFINITE DETENTION
PAGE – 7