UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEYRAN ANDREASYAN,

              Petitioner,

     v.

ALBERTO R. GONZALES, et al.,

              Respondents.

CASE NO. C06-285C

ORDER

This matter comes before the Court on Seyran Andreasyan's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. No. 3), the Report and Recommendation of United States Magistrate Judge Monica J. Benton ("R&R") (Dkt. No. 24), and Respondents' Objections to the R&R (Dkt. No. 26), as well as Respondents' unopposed motion for an extension of time to file those Objections (Dkt. No. 25). Having reviewed the materials submitted by the parties and the complete record, and finding that oral argument is not necessary, the Court hereby finds and rules as follows.

I.    BACKGROUND

Petitioner is being detained by the United States Immigration and Customs Enforcement ("ICE") pursuant to an order of removal to Uzbekistan. (Admin. Record ("AR") at L259.) Petitioner filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 28, 2006, challenging the constitutional

ORDER – 1

1   and statutory authority for detaining him any further due to the unlikelihood of his removal in the

2   reasonably foreseeable future.  (Dkt. No. 3.)  Petitioner filed the petition to be released from custody

3   while his removal from the United States is pending.

4          Petitioner was admitted to the United States as a refugee in October of 1999.  (AR at L012.)  He

5   became a lawful permanent resident in November of 2002.  (AR at R043.)  Petitioner pled guilty and was

6   convicted of Robbery in the Second Degree under Alaska Statute section 11.41.510(a)(1), with the

7   aggravating factors under Alaska Statute sections 12.55.155(c)(9) and (c)(10) on March 19, 2004.  (AR

8   at L049.)  On April 22, 2005, ICE filed a Notice to Appear, placing Petitioner in removal proceedings

9   and charging him with removability pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii),

10  which states that any alien who is convicted of an aggravated felony at any time after admission is

11  deportable.  (AR at L029–31.)  A warrant was issued, and Petitioner was taken into ICE custody.  (AR at

12  L025.)  After a removal hearing, the Immigration Judge denied Petitioner's request for withholding of

13  removal and deferral of removal under the Convention Against Torture and ordered him removed to

14  Uzbekistan on August 25, 2005.  (AR at L234.)  Petitioner appealed to the Board of Immigration

15  Appeals ("BIA").  (AR at L238–39, L244–54.)  The BIA issued its final decision on November 17, 2005,

16  affirming the IJ's decision without opinion, and making Petitioner's order of removal final.  (AR at

17  L259.)

18         Petitioner then filed this petition for a writ of habeas corpus, claiming that his indefinite detention

19  by ICE was in violation of his rights to procedural and substantive due process under the Fifth

20  Amendment to the United States Constitution, because he was neither a flight risk nor an aggravated

21  felon, and because his removal could not be effectuated in the reasonably foreseeable future as required

22  by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (Dkt. No. 3.)

23  Respondents filed a motion to dismiss on April 24, 2006.  (Dkt. No. 15.)  Magistrate Judge Benton found

24  that while there was a reasonable likelihood that Petitioner would be removed in the reasonably

25  foreseeable future, Petitioner should still be released because his continued detention did not further the

26  ORDER – 2

1   basic purposes of the statute.  (R&R at 7.)  The Respondents filed Objections to the R&R on June 19,

2   2006, concurring that there was a likelihood of removal, but disagreeing with Judge Benton's

3   recommendation of release.  Respondents contend that continued detention is needed for the following

4   reasons: (1) the Government of Uzbekistan needs Petitioner detained to be able to complete its decision

5   about whether to issue him travel documents; (2) Petitioner slowed the removal process by one month by

6   refusing to cooperate with ICE in securing travel documents; (3) Petitioner is a danger to the community;

7   and (4) Petitioner is a flight risk.  (Dkt. No. 26.)  Petitioner filed a Response to Respondents' Objections

8   on June 27, 2006.  (Dkt. No. 27.)  On June 30, 2006, when Petitioner had yet to be removed,

9   Respondents filed a Reply.  At that time, Respondents updated the Court and requested a few more

10  weeks of detention while awaiting Uzbekistan's decision.  (Dkt. No. 29.)

11  **II.    STANDARD OF REVIEW**

12          This Court reviews the record *de novo* when considering objections to a magistrate judge's R&R.

13  *See* 28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 2241(c)(3), federal courts can extend a writ of habeas

14  corpus to a prisoner when "he is in custody in violation of the Constitution or laws or treaties of the

15  United States."

16  **III.   ANALYSIS**

17          **A.      Removal in the Reasonably Foreseeable Future**

18          The Attorney General is allowed to order the removal of a deportable alien who falls within the

19  class of criminal offenders under 8 U.S.C. § 1227(a)(2) ("Any alien . . . in and admitted to the United

20  States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the

21  following classes of deportable aliens: Criminal Offenses.").  When an alien is ordered removed, the

22  Attorney General shall remove the alien from the United States within a period of 90 days.  INA §

23  241(a), 8 U.S.C. § 1231(a)(1)(A).  Section 1231(a)(2) provides for the mandatory detention for three

24  months of aliens found inadmissible under § 1227(a)(2) and awaiting removal from the United States.

25          An alien ordered removed who is inadmissible . . . [or] removable under section

26  ORDER – 3

1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).  In *Zadvydas*, the Supreme Court clarified this extension by establishing a three-month discretionary detention period beyond the initial 90 days, during which detention remains presumptively valid.  *Zadvydas*, 533 U.S. at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

*Zadvydas*, 533 U.S. at 701.  If removal is determined not to be reasonably foreseeable, a court should hold continued detention unreasonable and no longer authorized by the statute.  *Zadvydas*, 533 U.S. at 700–01.

Respondents do not object to the magistrate judge's determination that removal is likely in the reasonably foreseeable future.  (Dkt. No. 26.)  However, Judge Benton's recommendation was made on June 9, 2006.  The Court was then updated by the Respondents, on June 30, 2006, with the information that, on June 28, 2006, ICE Headquarters reported that a Uzbekistani Consular officer had stated on June 21, 2006 that Petitioner's case was "still under review and pending a decision."  (Dkt. No. 29.)  Based on this information, Respondents at that time requested a "few more weeks to await Uzbekistan's decision."  (Dkt. No. 29.)  Petitioner has now been detained for more than eight months since his order of removal became final on November 17, 2005.  Given the time that has passed since the R&R without the production of travel documents, and given that six weeks have passed since Respondents' last request for a "few more weeks," this Court now finds that the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future.

### B.    Petitioner's Participation in Obtaining Travel Documents

Respondents also claim that further detention is warranted because Petitioner delayed the removal

ORDER – 4

1  process by one month when he was unwilling to fill out paperwork needed to obtain travel documents.

2  As Judge Benton determined, this issue is now moot because Petitioner has since complied. (R&R at 6.)

3  Even subtracting that month from the total time Petitioner has been detained, Petitioner still has been in

4  detention for over seven months, longer than the six months allowed under *Zadvydas*.

5  ### C.    Continued Detention and the Purposes of § 1231(a)(6)

6      Not only is Petitioner's removal now unlikely in the reasonably foreseeable future, his continued

7  detention also fails to meet the purposes of the statute—assuring the alien's presence at the moment of

8  removal and protecting the community. *Lun v. INS*, Case No. C02-0937L (W.D. Wash. Dec. 4, 2002);

9  *see also Zadvydas*, 533 U.S. at 690. Respondents claim that Petitioner is both a flight risk and a danger

10  to the community, and, therefore, that releasing him would not meet the goals of the statute. The Court

11  disagrees.

12  ### i.    Risk of Flight

13      Respondents make the argument that releasing Petitioner will risk him "skipping" out of being

14  deported. (Dkt. No. 26 at 3.) The Supreme Court addressed the risk of flight in *Zadvydas*:

15  > By definition the first justification—preventing flight—is weak or nonexistent where
   removal seems a remote possibility at best. As this court said in *Jackson v. Indiana*, 406
16  > U.S. 715 (1972), where detention's goal is no longer practically attainable, detention no
   longer "bear[s][][a] reasonable relation to the purpose for which the individual [was]
17  > committed." *Zadvydas*, 533 U.S. at 690.

18      Respondents' risk-of-flight argument is sufficiently countered by this Court's determination *supra*

19  that removal does not seem reasonably foreseeable. However, further support is found in an ICE

20  Deportation Officer's determination that Petitioner is not a flight risk or a danger to the community and

21  subsequent recommendation of supervised release. (AR at R230.) While the Seattle Field Office

22  Director decided against the Deportation Officer's recommendation (AR at R240), and the Deportation

23  Officer did eventually concur in that decision, her concurrence was based on a statistic that Uzbekistani

24  citizens had been successfully removed in 2005, and not on any reconsideration and determination that

25  Petitioner is either a flight risk or a danger to the community. (Dkt. No. 23, Attachment 1.) Moreover,

26  ORDER – 5

1   Petitioner has demonstrated through his letters, as well as letters from his family and employers, that, if

2   released, he would have familial and spiritual support, a place to live, and a potential job that would tie

3   him to Alaska and deter him from fleeing.  (AR at L313–18.)  Petitioner's detention is not needed to meet

4   the purposes of the statute because Petitioner does not need to be detained to guarantee that he would

5   appear if the travel documents from Uzbekistan did arrive.  As the Supreme Court has noted, "The choice

6   . . . is not between imprisonment and the alien 'living at large.'  It is between imprisonment and

7   supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 696 (internal

8   citations omitted).

9        Finally, the Court notes that Respondents support their argument by citing *Demore v. Kim*, 538

10  U.S. 510, 527–28 (2003), a Supreme Court case that is inapposite to the current situation because it

11  regards 8 U.S.C. § 1226(c) and applies when the detention occurs *pending removal proceedings*.  In

12  contrast, Petitioner is being detained under 8 U.S.C. § 1231(a) and was already given his final order of

13  removal in November of 2005.  Even disregarding these distinctions, as the Ninth Circuit recognized, "In

14  *Demore*, the Court grounded its holding by referencing a 'brief period' of 'temporary confinement.'

15  There is no indication anywhere in *Demore* that the Court would countenance an indefinite detention."

16  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006) (citing *Demore*, 538 U.S. at 513, 523,

17  531).

18       For the foregoing reasons, Petitioner cannot be detained further on the basis that he is a flight

19  risk.

20            **ii.    Danger to the Community**

21       Relevant to Respondents' claim that Petitioner is a danger to the community, the Supreme Court

22  has held that, "once the flight risk justification evaporates, the only special circumstance present is the

23  alien's removable status itself, which bears no relation to a detainee's dangerousness." *Zadvydas*, 533

24  U.S. at 691–92.  The Court expanded, stating:

25       We have upheld preventative detention based on dangerousness only when limited to

26  ORDER – 6

> specially dangerous individuals and subject to strong procedural protections. . . . In cases in which preventative detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.

*Zadvydas*, 533 U.S. at 691 (citing *Kansas v. Hendricks*, 521 U.S. 346, 358, 368 (1997)). "These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." *Hendricks*, 521 U.S. at 358. However, the Supreme Court has also held that: "If removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Zadvydas*, 533 U.S. at 700.

While it is true that Petitioner was convicted of a crime of violence, there is no evidence to suggest that he suffers from a volitional impairment, mental illness, or special circumstance creating a greater danger of him committing future crimes. Petitioner has expressed regret for his actions and his intention to avoid criminal activity in the future. (AR at L272.) Petitioner also has completed many classes while incarcerated, including a 12-Step Recovery Program and Anger Management. (AR at L307, L276.) Furthermore, as Judge Benton noted, ICE previously determined that the Petitioner is not a danger to the community when its Deportation Officer initially recommended Petitioner's supervised release, even though Petitioner had been placed in Disciplinary Segregation for fighting several times while detained. (AR at R230–38.) In any event, as the dissent recognized in *Zadvydas*, "under the majority's view . . . it appears the alien must be released in six months even if presenting a real danger to the community." *Zadvydas*, 533 U.S. at 708 (Kennedy, J., dissenting).

**D.    Letter from Petitioner's Counsel**

Finally, Respondents contend that a letter from a staff attorney at the Federal Public Defender's Office slowed the removal process and contained an implied suggestion that Uzbekistan deny Petitioner's travel documents. The letter appears to analyze Uzbekistani law and asks for a correction if the law is misstated. (Dkt. No. 20, Exhibit C.) While the letter does recognize a potential reason that Petitioner's

1   request for travel documents could be rejected under Uzbekistani law, asking for clarification on the law

2   of the country to which its client is being deported cannot be deemed inappropriate or to have slowed the

3   removal process long enough to demand continued detention.

4   **IV.   CONCLUSION**

5          Respondents' unopposed motion for an extension of time to file the Objections considered herein

6   is GRANTED.  For the reasons discussed in this Order, the Court ADOPTS IN PART and DENIES IN

7   PART the Report and Recommendation and GRANTS the habeas petition.  Respondents' motion to

8   dismiss is DENIED.  The Petitioner shall be released from ICE custody within two business days after

9   entry of this Order, on conditions set by ICE, which may include those set forth in 8 C.F.R. § 241.5(a).

10  The Clerk is DIRECTED to send copies of this Order to Petitioner, Respondents, and Magistrate Judge

11  Benton.

12         SO ORDERED this 17th day of August, 2006.

13

14                                                       John C. Coughenour
                                                         United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26  ORDER – 8